UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 16-21179-CIV-MARTINEZ-GOODMAN**

SILVER CROWN INVESTMENTS, LLC,
a Florida limited liability company, et al.,

      Plaintiffs,

vs.

TEAM REAL ESTATE MANAGEMENT,
LLC, a Florida limited liability company, et al.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss Plaintiffs' Second

Amended Complaint and Derivative Complaint for, *inter alia*, lack of subject matter jurisdiction

[ECF No. 48], Plaintiffs' Response in opposition [ECF No. 49], and Defendants' corresponding

Reply [ECF No. 50]. After careful consideration of the requisite filings and the record, the Court

grants the motion.

## I.    FACTUAL BACKGROUND

This case arises out of a real estate project owned by Manor Glenn Investments, LLC

("Manor Glenn"). The Plaintiffs in this action are the thirteen limited liability companies

("LLC") which are all members of Manor Glenn. (ECF. No 40-1, ¶ 4). All of the members of

Plaintiff LLCs, with the exception of one Texas resident, are foreign investors from Argentina.

(*Id.* at ¶¶ 5-33). Defendants are: (1) Manor Glenn, (2) Team Real Estate Management, LLC; (3)

Team Real Estate Development, LLC; (4) seven individual residents and citizens of Florida, who

are alleged members of Team Real Estate Development, LLC (5) Atlanta R.E. Investment Group

LLC; and (6) Team Real Estate Title Services, LLC, which are alleged to be joint ventures. The Defendants are all alleged to be Florida Limited Liability Companies. (*Id.* at ¶¶ 38-53).[1]

According to the allegations in the Second Amended Complaint ("SAC"), the operative complaint in this action, in early 2014, Defendant Team Real Estate Management, LLC began soliciting foreign investors to fund a real estate project. (*Id.* at ¶ 56). The project entailed forming a manager-managed LLC called Manor Glenn, LLC, which would purchase some property in College Park, Georgia and convert it into condominiums. (*Id.* at ¶¶ 35, 59). Plaintiffs allege that Defendants contacted Plaintiffs to solicit investments, and in concert, represented to Plaintiffs that their investment in Manor Glenn would yield a guaranteed 12% return. (*Id* . at ¶ 58).

Plaintiffs further contend that Defendant Team Real Estate Management, LLC, by and through its members and managers, solicited a total of $3.2 million from Plaintiffs and others to capitalize Manor Glenn. Each Plaintiff purchased ownership interest in Manor Glenn at a value of $32,000.00 for each percent of the LLC (*Id.* at ¶ 63). On May 6, 2014, through the Member Interest Transfer Agreement, all ownership interest in Manor Glenn was transferred to Plaintiffs in proportion to their investments. (ECF No. 40-1). On the same day, the Amended and Restated Operating Agreement became effective. (ECF No. 40-2).

Plaintiffs allege that Defendant Team Real Estate Management consistently failed to provide an accounting of Manor Glenn, LLC. (*Id.* at ¶ 59). Prior to filling the lawsuit, individual Plaintiffs made requests to Defendants for status updates and accounting of funds, including the

---

[1] Plaintiffs' Amended Complaint was dismissed by this Court because Plaintiffs did not sufficiently plead the domicile of their members. This Court noted that "while not addressed in Defendants' Motion to Dismiss, upon review, the Court also finds that Plaintiffs' jurisdictional allegations as to the individual Defendants are also deficient." (ECF No. 39, p. 3). Even when spoon-fed the argument, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint fails to argue that personal jurisdiction as to the individual defendants was insufficiently pled. Instead, Defendants make the failed argument of lack of subject matter jurisdiction. Given that Defendants had the opportunity to make the proper argument and that personal jurisdiction is a disfavored defense that is waived if not raised, *see* Fed. R. Civ. Pro. 12(h)(1), this Court will find that personal jurisdiction exists and proceed to evaluate the merits of the claims.

balance of the Team Real Estate Title Services, LLC's escrow account, which were ignored. (*Id.* at ¶ 66, ¶ 111). When Defendants gave Plaintiffs access to a financial spreadsheet, the records indicated checks and bills being paid to and by unrelated entities. (*Id.* at ¶ 67, 110).

Plaintiffs further allege that since the initial offering, Defendants lied to Plaintiffs. (*Id.* at ¶ 59). For example, Defendants represented that the purchase price of the property was $2,482,400.80, but it was in fact $1,725,000.00. (*Id.* at ¶ 60). Moreover, Plaintiffs claim that there was a willful diversion of corporate assets to the personal project of its manager as well as grossly negligent operation and supervision of Manor Glenn. (*Id.* at ¶ 64). Other examples of Defendants misconduct include: (1) committing waste by allowing the property to deteriorate significantly until Defendants' removal as managers in late 2015 (*Id.* at ¶ 65); (2) failing to start construction (*Id.* at ¶ 74); (3) failing to provide security for the property (*Id.* at ¶ 74); (4) failing to report in a timely manner the theft of air conditioning units that were stolen from the property on February 23, 2015 to authorities and insurance agency (*Id.* at ¶ 85); (5) refusing to provide an Examination Under Oath to Seneca Insurance concerning the theft of the air conditioning units (*Id.* at ¶ 87); (6) failing to provide regular status reports (*Id.* at ¶ 85); (7) failing to maintain adequate insurance coverage (*Id.*); (8) paying the manager a management fee in contravention of the Operating Agreement (*Id.* at ¶ 80); (9) beginning the conversion of property to condominiums in contravention of the Operating Agreement (*Id.*).

As a result of the alleged wrongdoings, Plaintiffs filed this fifteen-count action alleging breach of contract, fraud, breach of fiduciary duty in violation of Florida state law, and accounting, among other counts. Defendants filed the instant Motion arguing that this Court lacks subject matter jurisdiction and that Plaintiffs have failed to state a cause of action as to all Defendants. [ECF No. 48 at 2].

## II.  DISCUSSION

Defendants move to dismiss the SAC on three grounds: (1) lack of subject matter jurisdiction; (2) failure to state a cause of action; and (3) failure to plead with specificity.

When deciding Rule 12(b) motions to dismiss, a district court first addresses any jurisdictional challenges. *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 575 (1999); *Llano Funding Grp., LLC v. Gallo,* No. 9:14-CV-81562, 2015 WL 12791482 at *1-2 (S.D. Fla. 2015) (Rosenberg, J.). Therefore, this Court will address each of Defendants' grounds for dismissal in the same order.

### A.  Subject Matter Jurisdiction

"A party invoking federal court's diversity jurisdiction must allege 'facts' that show that federal subject matter jurisdiction exists." *Golden v. Jericho All-Weather Opportunity Fund, LLP,* No. 17-CV-23241, 2017 WL 3738704, at *1 (S.D. Fla. 2017) (Scola, J.) (citing *Travaglio v. Am. Express Co.,* 753 F.3d 1266,1268 (11th Cir. 2013)).   Then, an opposing party can challenge subject matter jurisdiction either facially or factually through a 12(b)(1) motion. *See* Fed. R. Civ. P. 12(b)(1); *Int'l Oil Trading Co., LTD, v. Al-Saleh,* No. 11-CV-22645, 2012 WL 13012775, at *1 (S.D. Fla. Mar. 3, 2012) (Martinez, J.). In resolving a facial challenge to subject matter jurisdiction, a court takes the allegations in the complaint as true and looks to see if the plaintiff has alleged a basis for jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond County,* 501 F.3d 1244, 1251 (11th Cir. 2007); *Al-Saleh,* 2012 WL 13012775, at *1. On the other hand, in a factual challenge contesting the existence of subject matter jurisdiction in fact, "matters outside the pleading, such as testimony and affidavits are considered." *McElmurray,* 501 F.3d at 1251. If there is a factual challenge, then the burden is on the party invoking federal jurisdiction to prove that jurisdiction exists. *Al-Saleh,* 2012 WL 13012775, at *1.

A federal court has subject matter jurisdiction over civil actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). "Citizenship is equivalent to domicile for purposes of diversity jurisdiction." *Travaglio v. Am. Express Co.,* 735 F.3d 1266, 1269 (11th Cir. 2013) (internal quotations omitted). Domicile, in turn, entails residence and an intention to remain there indefinitely. *Id.*

For purposes of determining diversity jurisdiction, the citizenship of a limited liability corporation (LLC) is the citizenship of each of its members. *Rolling Greens MPH, L.P, v. Comcast SCH Holding, LLC,* 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam); *Golden,* 2017 WL 3738704, at *1. If a member of an LLC is itself an LLC, the citizenship of the LLC "must be traced through however many layers of partners or members there may be." *Orchid Quay, LLC, v. Suncor Bristol Bay, LLC,* 178 F. Supp. 3d 1300, 1304 (S.D. Fla. 2016) (Marra, J.) (quoting *Zambelli Fireworks Mfr. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010)).

Here, Defendants contest subject matter jurisdiction arguing that Manor Glenn, which is listed in the complaint as a nominal defendant, should be realigned as a plaintiff. (ECF No. 48, p. 9). Further, Defendants contends that once Manor Glenn is realigned as a plaintiff, complete diversity is destroyed because at the end of Manor Glenn's management chain is Candelaria Barrera—a Florida resident. (*Id.* at p. 7, 10, Ex. A-C). Defendants offer as evidence screengrabs of public records maintained by the Florida Department of State, Division of Corporations showing the chain of management. (*Id.*).

Even if Manor Glenn is realigned as a plaintiff in this action, Defendants' argument does not adequately challenge jurisdiction and fails. For purposes of diversity jurisdiction, it is the citizenship of an LLC's *members*—not its managers—that is relevant. *See, e.g., Rolling Greens,*

374 F.3d at 1022. In the SAC, Plaintiffs listed the four LLCs that are members of Manor Glenn. (ECF No. 40, ¶ 4). Then, Plaintiffs listed the citizenship and residence of each of the members of the LLCs (*Id.* at ¶¶ 5-19). All of the members are citizens of Argentina or Texas. (*Id.*) Accordingly, every Plaintiff is diverse from every Defendant and thus, § 1332(a)(3) is satisfied.

### B. Failure to State a Claim

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff must plead "only a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint does not need detailed factual allegations, a plaintiff is nevertheless required to present "more than labels and conclusions." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. Only when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged is a claim facially plausible. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

When considering a motion to dismiss, first a court disregards "legal conclusion[s] couched as factual allegation[s]." *Twombly*, 550 U.S. at 555. Second, the remaining well-pleaded factual allegations are taken as true, and all reasonable inferences are drawn in the light most favorable to the plaintiff. If the plaintiff nudged his or her claim across the line from conceivable to plausible the complaint will survive a motion to dismiss. *Atmos Nation, LLC v. All Fun Gifts Distrib., Inc.,* No. 16-CV- 60821, 2017 U.S. Dist. LEXIS 191671 (S.D. Fla. July 18, 2017) (Martinez, J.) (citing *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court will analyze each of Plaintiffs' counts separately.

### 1. **Direct Claims**

#### a. **Breach of Contract (Count I)**

To sustain a claim for breach of contract under Florida law, a plaintiff must sufficiently plead "(1) a valid contract, (2) a material breach, and (3) damages." *Transunion Risk & Alt. Data Sols. v. Maclachlan,* No. 14-CV-81485, 2016 WL 777091, at *4 (S.D. Fla., Feb. 29, 2016) (Marra, J.) (citing *Murciano v. Garcia,* 958 So. 2d 423, 423 (Fla. 3d DCA)). It is difficult to make out what valid contract was allegedly breached and what were those material breaches.

First, Plaintiffs seem to allege that they had a contractual relationship with Defendants pursuant to their Restrictive Member Agreement and the Operating Agreement attached to the complaint as Exhibits A and B. (ECF No. 40, ¶ 73). However, the purpose of the Restrictive Member Agreement—which contains a merger clause—was to transfer all interest in Manor Glenn from Atlanta R.E. Investments, LLC (who is in an allegedly in a joint venture with Team Real Estate Management) to Plaintiffs. (ECF No. 40-1). Plaintiffs have not alleged that the transfer of interest in Manor Glenn did not occur. Therefore, there is no alleged breach of the Restrictive Member Agreement.

Second, Plaintiffs allege Defendants breached the Operating Agreement, attached to the complaint as Exhibit B. An operating agreement is a contract that establishes "a more complicated and nuanced set of contractual rights and duties." *Dinuro,* 141 So. 3d at 741. "The precise terms of the [operating] agreement are critical in determining whether a party has breached a contractual duty." *Demir v. Schollmeier,* 199 So. 3d 442, 445 (Fla. 3d DCA 2016) (internal quotations omitted).

Here, the Operating Agreement is between Manor Glenn Investments, LLC and its members, the Plaintiffs. (*See* ECF No. 40-2, p. 3). The Operating Agreement appoints Team Real

Estate, LLC as manager and imposes both duties and limitations on its powers. (*See Id.*, p. 3, 16-18). The Operating Agreement, however, makes no mention of individual Defendants alleged to be members of Team Real Estate Management. Plaintiffs allege that "by reason of their position as members, managers, directors, officers, and/or fiduciaries of Team Real Estate[] and because of their ability to control the business, corporate and financial affairs of Manor Glenn" each of the individual defendants owed duties to Manor Glenn. (ECF No. 40, ¶ 47). These allegations are however, conclusory; Plaintiffs allege no *facts* that could support a plausible finding that the individual Defendants had a valid contract with Plaintiffs. Accordingly, Plaintiffs did not sufficiently plead a breach of contract claim—and therefore, this Count is dismissed.

### b. Breach of Fiduciary Duty in Violation of Fla. Stat. § 605.04091 (Count II)

From the outset, Defendants assert that Plaintiffs' breach of fiduciary duty in violation of Fla. Stat. § 605.04091 is a derivative claim. Further, Defendants argue Plaintiffs' SAC contains no allegations showing Plaintiffs complied with the statutory requirements to prosecute a derivative claim under Fla. Stat § 605.0802 and, therefore, the claim must be dismissed. (ECF No. 48, p. 13). Defendants rely on *Dinuro Investments, LLC v. Camacho,* 141 So. 3d 731 (Fla. 3d DCA 2014).

In *Dinuro,* the court articulated the controlling test for whether claims should be brought directly or derivatively. A claim can be brought directly "only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company and (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members." *Dinuro,* 141 So. 3d at 739-40. Plaintiffs, however, do not have to satisfy this two-prong test "if there is a separate duty owed by the defendant(s) to the individual plaintiff under contractual or statutory

mandates." *Id.* at 740. *See ECOmed, LLC v. Asahi Kasei Medioal, Co.,* No. 16-cv-62301, 2017 U.S. Dist. LEXIS 65858 (S.D. Fla. April 28, 2017) (Zloch, J.) (finding members of LLC could not bring direct claims against a corporation they had an agreement with because they did not satisfy the two prong-test articulated in *Dinuro* nor had they alleged a contractual or statutory duty); *Smith v. Williams,* No. 5:14-cv-144-RS-EMT, 2015 U.S. Dist. LEXIS 1046, at *2-3 (N.D. Fla., Jan. 6, 2015) (barring LLC member's direct claim against another LLC member because his injury stemmed from the devaluation of the company). Although some portions of the Florida Revised Limited Liability Company Act had already been enacted, the *Dinuro* court did not address the Act.

The Florida Revised Limited Liability Company Act provides that "a member maintaining a direct action under this section must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company." Fla. Stat. § 605.0801. In *Ferk Family, LP v. Frank,* the same court that decided *Dinuro,* found that under the revised act, plaintiffs can still bring direct claims without meeting the two-prong test because there was a separate *contractual* duty owed by the defendants to the plaintiffs. 240 So.3d 826, 827-829 (Fla. 3d DCA, 2018) (emphasis added). *See also Fritz v. Fritz,* 219 So.3d 234 (Fla. 3d DCA, 2017). However, the express terms of the statute seem to do away with the separate statutory duty exception articulated in *Dinuro*. Accordingly, only if there is a contract—like an LLC's operating agreement—allowing plaintiff members to bring direct claims against other members or managers, can a plaintiff bring a direct action without needing to satisfy the two-prong test.

Here, Plaintiffs allege that due to the breaches of fiduciary duties, "the funds and assets of MANOR GLENN are being mismanaged and wasted, and/or diverted – thereby resulting

capital losses to the Plaintiffs." (ECF No. 40, ¶ 89). Moreover, "Plaintiffs have been damaged in amounts equal to their rightful ownership of the company, loss of use of investment income, loss of promised profits." (*Id.*). These allegations fail to show that Plaintiffs' capital losses are a direct injury to the Plaintiffs and not a result of the loss of value of Manor Glenn. *See Dinuro* 141 So.3d at 740 (holding that member of LCC lacked standing to bring a direct action against two other LLC members because his injury, a loss of the money he invested in the LCC, was a result of the total devaluation of the LLC); *Lewis v. Seneff,* 654 F. Supp. 2d 1349, 1364 (S.D. Fla. 2009) (finding that when limited partners are damaged "to the extent of their proportionate interest in the partnership" the harm to the partner is indirect and the partner cannot bring a direct action). Moreover, there is nothing in Manor Glenn's Operating Agreement that provides for members to directly sue managers. *See* (ECF No. 40-2, pp. 14-18.). Therefore, Plaintiffs must bring this claim derivatively.

For a member of an LLC to bring a derivative claim against an LLC's manager, the member must comply with Fla. Stat. § 605.0802's prerequisites:

> (1) The member first makes a demand on … the managers of a manager-managed limited liability company requesting that the managers … cause the company to take suitable action to enforce the right, and the managers … do not take action within a reasonable time, not to exceed 90 days; or

> (2) A demand under subsection (1) would be futile, or irreparable injury would result to the company by waiting for … the managers to take action to enforce the right in accordance with subsection (1).

The law provides for pre-suit demands "to give corporate directors an opportunity to correct any internal abuses without lawsuit" thereby conserving company and judicial resources. *McCabe v. Foley,* 424 F. Supp. 2d, 1315, 1319 (M.D. Fla. 2006). Accordingly, Federal Rule of Civil Procedure 23.1(b)(3) requires that a plaintiff bringing a derivative claim and asserting that

a pre-suit demand would have been futile, must plead futility with particularity.[2] *See* F. R. Civ. Pro. 23.1(b)(3); *Firehouse Gallery, LLC v. Phillps,* No. 8:09-CV-698-T-17-MAP, 2009 U.S. Dist. LEXIS 113476, at *12-13 (M.D. Fla., Nov. 19, 2009) (finding that an LLC member could not bring a derivative claim because he did not plead with particularity demand futility). "The adequacy of the pleading is determined by the law of the state of incorporation." *McCabe,* 424 F. Supp. 2d at 1319.

In *Firehouse Gallery, LLC v. Phillips,* the plaintiff brought a derivative claim belonging to a Delaware LLC without alleging a pre-suit demand. No. 8:09-cv-698-T-17-MAP, 2009 WL 4015575, at *4 (M.D. Fla., Nov. 19, 2009). Therefore, the plaintiff had to allege with particularity in his complaint why demand would be futile. *Id.* The court found that member-managed LLCs were sufficiently analogous to corporations and applied the Delaware standard for pleading futility with particularity. *Id.* Under Delaware law, a plaintiff must provide particularized factual allegations which establish that a majority of the directors cannot utilize independent and disinterested business judgment in responding to a demand. *Id.* at *5 (internal quotations marks omitted); *In Re Mako Surgical Corp. Derivative Litig.,* No. 12-cv-61238, 2013 U.S. Dist. LEXIS 195399, at *2 (S.D. Fla., June 6, 2013) (Cohn, J.). Since the plaintiff had not pled particularized facts showing that the defendant director was an interested member or lacked independence, the court dismissed the count as not properly pled under FRCP 23.1. *Id.; See In Re Mako Surgical Corp. Derivative Litig.,* No. 12-cv-61238, 2013 U.S. Dist. LEXIS 195399, at *3-4 (S.D. Fla., June 6, 2013) (Cohn, J.) (finding that alleging demand would be futile because defendants "faced a substantial likelihood of liability" for causing or allowing the company to commit the injurious acts as insufficient to challenge defendants' independence or disinterest.)

---

[2] Neither party makes a FRCP 23.1 argument. While under FRCP 23.1 plaintiffs are required to plead with particularity, what is sufficient to meet that higher standard is dictated by the law of the state of incorporation.

Here, Plaintiffs simply allege that a § 605.0802 pre-suit demand to Defendants would have been futile because Defendants had a guilty participation in the wrongs complained of. (ECF. No. 40, ¶ 68). Plaintiffs however, do not allege what specific acts each Defendant committed which contributed to Plaintiff's injury. This is analogous to stating that Defendants "faced a substantial likelihood of liability" which, by itself, is insufficient to establish that a pre-suit demand would be futile. *See In Re Mako,* 2013 U.S. Dist. LEXIS 195399, at *3-4. Next, Plaintiffs allege because Defendants were removed from Manor Glenn's management on December 16, 2015, and no longer control Manor Glenn, demand would be futile. *See* (ECF. No. 40, ¶ 70; ECF No. 40-3). Plaintiffs cite no law, nor did this Court's research reveal any law, supporting this proposition. Accordingly, considering: (1) underlying policy supporting pre-suit demands, (2) the heightened pleading requirements under FRCP 23.1(b)(3); (3) the controlling standard under Delaware law—which is routinely applied by Florida courts faced with this issue; and (4) the lack of cited case law supporting Plaintiffs' proposition, this Court dismisses this count for Plaintiffs' failure to comply with the requirements to prosecute a derivative action under Fla. Stat. § 605.0802.

### c. Fraudulent Inducement (Count III)

First, Defendants argue that Plaintiffs lack standing to assert a direct claim for fraudulent inducement. (*See* ECF No 48, p. 14). Again, under the *Dinuro* test, Plaintiffs must show that (1) there is a direct harm to Plaintiffs such that the alleged injury does not flow subsequently from an initial harm to the company and (2) there is a special injury to the Plaintiffs that is separate and distinct from those sustained by the non-plaintiff members. *See Dinuro,* 141 So. 3d at 739-40. Here, Plaintiffs allege that the fraudulent statements and omissions were made to induce the Plaintiffs investment in Manor Glenn and makes no mention of whether those fraudulent

statements were also made to induce the non-plaintiff members. The Plaintiffs allegations likely satisfy the direct harm requirement. *Daccache v. Quiros,* No. 16-cv-21575, 2018 WL 2248409, at *7 (S.D. Fla., May 15, 2018) (Moreno, J.) (finding that plaintiffs alleged reliance on fraudulent omissions which induced them to purchase their limited partnership interests occurred prior to any harm to the limited partnership and therefore likely satisfied the *Dinuro* direct harm requirement). Considering the SAC in light most favorable Plaintiffs, this Court will assume that a lack of an allegation that the non-plaintiff members were also fraudulently induced to invest in Manor Glenn through Defendants' fraudulent statements and/or omissions establishes that Plaintiffs suffered a special injury. *See id.,* at *7 (finding that because plaintiffs brought suit as putative class action alleging that more than 800 individuals were harmed by defendants actions they did not establish their injuries were separate and distinct from those suffered by other investors); *Strazzulla v. Riverside Banking Co.,* 175 So. 3d 879, 885-86 (Fla. 4th DCA, 2015) (finding that plaintiff's alleged injury of being fraudulently induced to not sell their stock was distinct from any injury suffered by other shareholder who did not receive the same representations).

Even if Plaintiffs have standing to bring a direct claim for fraudulent inducement, Plaintiffs have not sufficiently pled their claim under the controlling Fed. R. Civ. Pro. 9(b) pleading standard. ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.") The Eleventh Circuit has explained:

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" The application of Rule 9(b), however, "must not abrogate the concept of notice pleading." *Id.* Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same,

and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations omitted). Moreover, while Plaintiffs need not pinpoint the exact moment the fraudulent statements and/or omissions were made, they must provide "a sufficiently narrow time frame from which defendants could derive notice as to when the representations were made." *Gasltadi v. Sunvest Cmtys. USA, LLC,* 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009) (Altonaga, J.).

Here, Plaintiffs allege that "Defendants, acting individually and on behalf of various entities, made fraudulent misrepresentations or omissions to the Plaintiffs regarding material facts including, but not limited to, the Development's operations, financial condition, ownership, debt…." (ECF No. 40, ¶ 92). As misrepresentations, Plaintiffs allege that (1) when soliciting investments, Defendants represented that Plaintiffs would receive 12% guarantee return on their investment and (2) Defendants represented that the purchase price of property as $757,400.80 over the actual purchase price. (*Id,* ¶¶ 93, 95). Plaintiffs allege simply that the fraudulent statements and/or omissions were made "in 2014" and fail to identify which Defendant made the statement, where, to which Plaintiff, and why those statements were in fact fraudulent. (*Id,* ¶¶ 56, 58, 62-63, 90-101). These allegations do not sufficiently give Defendants fair notice of the claim against them. *See Zarella v. Pac. Life Ins., Co,* 755 F. Supp. 2d 1218, 1223 (S.D. Fla. 2010) (Cohn, J.) (dismissing all of plaintiff's fraud-based claims, including a fraudulent inducement claim, because the complaint "fail[ed] to identify the time and place of the alleged statements regarding the insurance policies, who made those statements, and what information [defendant's] had or could have had in its possession to indicate that the statements were false when made."); *Medalie v. FSC Sec. Corp.,* 87 F. Supp. 2d 1295, 1307 (S.D Fla. 2000) (Gold, J.) (plaintiff successfully plead fraud by alleging: the name of agent which made fraudulent

- 14 -

misrepresentations, the two specific locations where the representations were made, a six month time frame of when the representations were made [which the court found sufficiently narrow because the alleged misrepresentations occurred ten years before the lawsuit] and quoted and/or paraphrased the material misrepresentations made.).

Plaintiffs contend that they are unable to provide more details about the fraudulent inducement because they have not had an opportunity to conduct discovery. (ECF No. 49, p. 12). While this Court sympathizes, it cannot allow Plaintiffs "to file such a general claim and then attempt to discover unknown wrongs later in the litigation process." *Zarrella,* 755 F. Supp. 2d at 1224. Accordingly, Plaintiffs have not pled fraudulent inducement with the requisite particularity and, thus, the count should be dismissed.

### d. Accounting (Count IV)

"An accounting is best understood as a remedy for a cause of action, not as a cause of action in its own right." *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014). An accounting is appropriate in every case where a party shows the existence of a fiduciary relation. *Id.* at 1311; *Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-CV-23905, 2017 U.S. Dist. LEXIS 141815, at *10-11 (S.D. Fla. 2017) (Goodman, J.). Here, there is a statutory fiduciary relation between Defendants—as managers of Manor Glenn—and Plaintiffs—as members of Manor Glenn. Fla. Stat. 605.04091. Accordingly, this Court will not dismiss this count for failure to state a claim.

### e. Inspection of Books and Records under Fla. Stat. 605.0411 (Count V)

Plaintiffs cannot bring their claim under Fla. Stat § 605.0411 because that section became effective in May 10, 2016. Defendants were removed as managers on December 16, 2015. (ECF No. 40-3). Accordingly, Defendants' conduct is not governed by § 605.0411, but by § 608.4101.

This section affords Plaintiffs, as members of the LLC, the right to inspect and copy records. Fla. Stat. § 608.4101(2). A limited liability company shall provide members: "[w]ithout demand, information concerning the limited liability company's business or affairs reasonably required for the proper exercise of the member's rights …." Fla. Stat. §608.4101(2)(a). *See Merovich v. Huzenman,* 911 So. 2d 125, 127 (Fla. 3d DCA 2005) (applying Fla. Stat. § 608.4101 to manager of an LLC, even when text of the statute imposes duty on the LLC, and denying dismissal of count).[3] Moreover, Section 10.2 of the Operating Agreement provides:

> The Manager shall maintain or cause to be maintained complete and accurate books of account and records of the Company's affairs at the Company's principal office and each Member shall have the right to inspect the Company's books and records at any reasonable time during normal business hours upon advance written notice to the Manager.

(ECF No. 40-2, p. 20). Plaintiffs allege that various Plaintiffs made oral and written requests to Defendants to inspect the books and records of the Manor Glenn in order to determine the value of Plaintiffs' right, entitlement and ownership. (ECF. No. 40, ¶¶ 120, 125). These requests were ignored. (*Id.*). On December 16, 2015, Plaintiffs made a formal demand for an accounting and for Defendants to turn over the Manor Glenn's books. (ECF No. 40-3). Defendants' response to the request was allegedly "woefully inadequate and non-responsive." (*Id.*, ¶ 121). Further, Plaintiffs allege that Defendants have control over the books and records requested by Plaintiffs.

Defendants cite to *Omes v. Ultra Enterprise, Inc.,* to support two propositions. 116 So. 3d, 633, 635-36 (Fla. 3d DCA 2013). First, a corporation is not obligated to prepare a record that does not exist to satisfy a shareholders' statutory inspection rights. *Id.* at 636. Here, however, Defendants do not claim that the records Plaintiffs seek do not exist. Second, "the statutory inspection rights of a shareholder are not tantamount to a free-ranging bill of discovery for

---

[3] Fla. Stat. § 605.0410, which replaced § 608.4101, expressly imposes the duty to keep records and allow members to inspect them on managers of manager-managed LLCs. This tends to show that the *Merovich* court was correct in imposing a duty on the managers even though the statute expressly imposed a duty on the LLC.

corporate financial records." *Id.* at 635-36. In *Omes,* the court denied appellants request for further records because it found that the lower court had afforded appellant ample access to the records he was statutorily entitled to inspect. *Id.* At the motion to dismiss stage, this Court must take as true Plaintiff's allegations that Defendants' response to the demand for inspection was inadequate and, therefore, Plaintiffs have not been afforded access to the records they have a statutory right to inspect. Accordingly, this court will not dismiss this count for failure to state a claim.

### 2. <u>Derivative Claims</u>

As previously stated, pursuant to Fla. Stat. § 605.0802, to bring a derivative claim, an LLC member must make a pre-suit demand or, in the alternative, plead with particularity why a demand would be futile. *See, supra*. As stated above, Plaintiffs in this case failed to plead demand futility with particularity. Therefore, Plaintiffs have not met the requirements to prosecute a derivate claim under Florida law and all of their derivative claims should be dismissed.

Assuming arguendo that Plaintiffs' pre-suit demand had been satisfied, each derivative count would still be dismissed for the following reasons.

#### a. **Breach of Fiduciary Duty (Counts VI-XII; Count XV)**

Counts VI-XIII allege a breach of fiduciary duty by Defendants Valeria Seminara, Chrisitan Finkelberg, Lidia Salerno, Andres Robert Finkelberg, Ruben Santurian, Diego Besga, and Alex Nahabetian. Each count is identical; Plaintiffs simply switch out the Defendants' names. (*See* ECF No. 40, pp. 26-36). To sustain a claim for breach of fiduciary duty under Florida law, a plaintiff must sufficiently plead (1) the existence of a fiduciary duty, (2) breach of

a fiduciary duty, and that the breach proximately caused the plaintiff's damages. *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *Doshi v. Cagle Road Land, LLC*, *8 2018 WL 1796224.

Accordingly, in a set of identical five paragraph counts, Plaintiffs allege: (1) Defendants owed both a common law and a statutory fiduciary obligation, (2) Defendants breached that duty, and (3) that breach proximately caused Plaintiffs' injury. (*See, e.g,* ECF No. 40, ¶¶ 133-137). Plaintiffs fail to allege *facts* that could show this Court that each individual Defendant is plausibly liable for a breach of fiduciary duty.

Plaintiffs' claim against Defendant Team Real Estate Title Service, LLC for breach of fiduciary duty also fails. Plaintiffs assert that Team Real Estate Title Service, LLC "held positions of trust with regard to Manor Glenn and therefore had respective fiduciary duties…." (ECF No. 40, ¶ 178). Further, Plaintiffs state that Defendant breached its duties by "failing to properly supervise the disbursements of the investors' monies in violation of standard general practices in the real estate development industry." (*Id.* at ¶ 180). Again, Plaintiffs fail to allege *facts* from which this court can draw a reasonable inference of liability. Accordingly, this Court dismisses this count.

### b. Negligence (Count XIII)

Plaintiffs' claim for negligence suffers the same defects as the preceding counts for breach of fiduciary duty. To sustain a claim for negligence a plaintiff must show that "(1) defendants owe plaintiffs a duty, (2) defendants breached the duty, (3) defendants' breach injured plaintiffs, and '(4) [plaintiffs'] damage [was] caused by the injury to the plaintiff as a result of the defendant's breach of duty.'" *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Delgado v. Laundromax*, Inc., 65 So. 3d 1087, 1089 (Fla. 3d DCA 2011)). Plaintiffs allege that Defendants "negligently failed to perform their duties," and that "as a direct

and proximate result of Defendant Director's breach of his fiduciary duties," Plaintiffs and Manor Glenn have suffered monetary losses and damages to reputation, business operations, and goodwill. (ECF No. 40, ¶ 170-172). Again, Plaintiffs do not allege sufficient facts to state a plausible claim for relief. Accordingly, this count is dismissed.

### c. Unjust Enrichment (Count XIV)

Defendants argue that Plaintiffs unjust enrichment count must be dismissed because Plaintiffs cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists between the parties. (ECF No. 48, p. 17). This proposition, while true, is only operative upon a showing that an express contract exists—not upon a mere allegation of an express contract. *Samana, Inc. v. Lucena,* 156 F. Supp. 3d 1373, 1374 (S.D. Fla. 2016) (Williams, J.) Thus, "[u]ntil an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature." *Martorella v. Deutsche Bank Nat'l Trust Co.,* 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) (Marra, J.).

Here, attached to the Plaintiffs' SAC is the Operating Agreement between Manor Glenn and its members. The Operating Agreement appoints Defendant Team Real Estate Management as the Manor Glenn's manager and both assigns its duties and restricts its powers. While some provisions designate for what Defendant Team Real Estate is authorized to use Manor Glenn's resources for—since there are other grounds to dismiss the claim—this Court will assume that the Operating Agreement is not an express contract on the subject matter.

Therefore, the court evaluates the elements of an unjust enrichment claim. "In Florida, the elements of a claim for unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to

retain it without paying the value thereof." *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1306 (S.D. Fla. 2017) (Moreno, J.).

Plaintiffs claim that "by utilizing the substantial monetary investments made by Plaintiff members to capitalize Manor Glenn, and then engaging in the wrongful acts enumerated above for their own personal profit and gain," Defendants acting in concert accepted the benefit conferred, and squandered Plaintiffs' investment. Therefore, it would be unfair under the circumstances for the Defendants to keep the benefit. (ECF No. 40, ¶ 174).

Once again, Plaintiffs provide no factual allegations and rely on reincorporating the first seventy one paragraphs of their complaint. Perhaps the most relevant paragraph, in the seventy-one paragraphs Plaintiffs incorporated, is paragraph sixty-four, which alleges there was a "willful diversion of corporate assists to the personal projects of its managers" and that "the unlawful acts engaged in by Manor Glenn's directors, from which they derived improper personal benefit, are in violation of the good faith requirement of § 605.04901." (*Id.,* ¶ 64). Paragraph sixty-four suffers from the same defect as most paragraphs in Plaintiffs' complaint—it is conclusory.

Moreover, while plaintiffs are allowed to plead a breach of contract claim and, in the alternative, an unjust enrichment claim, that is not what Plaintiffs have done here. Count XIV does not say that it is pled in the alternative and it is based on the same facts as Plaintiffs breach of contract claim. *See Coleman v. CubeSmart,* No. 16-CV- 25009, 2018 U.S. Dist. LEXIS 91976, at *35 (S.D. Fla., May 31, 2018) (Martinez, J.) (dismissing an unjust enrichment claim because count did not state that the claim was plead in the alternative, and the claim was based on the same predicate common facts underlying the other counts.). Accordingly, Plaintiffs have not sufficiently pled a claim for unjust enrichment. As a result, this Court dismisses Count XIV of the SAC.

## C. Shotgun Pleading

Finally, this Court notes that Plaintiffs' SAC is a shotgun complaint. Shotgun pleadings undermine the basic purpose of the Rules of Federal Procedure. *Gilroy v. City of Fort Pierce,* No. 16-cv-14521, 2018 U.S. Dist. LEXIS 44493, at \*4-5 (S.D. Fla. Mar. 16, 2018) (Martinez, J.). Accordingly, "when a complaint constitutes a shotgun pleading, a court should strike or dismiss it." *Id.* at \*5. *See Jovine v. Abbott Laboratories,* 795 F. Supp. 2d 1331, 1337 (S.D. Fla. 2011) (Cohn, J.). The Eleventh Circuit has listed the four most common types of shotgun pleadings:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Although Plaintiffs' SAC does not fit neatly into one of the four categories outlined above, it enjoys a combination of the characteristics condemned by the Eleventh Circuit. First, in every count Plaintiffs re-allege and incorporate paragraphs 1-71. Paragraphs 1-55 pertain primarily to jurisdiction and should not be incorporated into any of the counts. Paragraphs 56-71 labeled "Background Facts" are, for the most part, conclusory, vague, and not material to every count they are incorporated into—the second evil identified above. Further, like in the fourth

category above, Plaintiffs assert multiple claims against the Defendants without identifying which of the defendants are responsible for which act or omission.

Despite this Court's ability to dismiss Plaintiffs' SAC in its entirety as a shotgun pleading, the Court addressed all of Defendants' bases for dismissal. *See Jovine*, 795 F. Supp. 2d at 1337 (dismissing the entire complaint as a shotgun pleading, but addressing the merits of each count).

## III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that

1.      Defendants Motion to Dismiss Plaintiffs' Second Amended Complaint [ECF No. 48] is **GRANTED**;

2.      Plaintiffs' Second Amended Complaint for Damages and Derivative Complaint [ECF No. 40] is **DISMISSED WITHOUT PREJUDICE AS TO ALL DEFENDANTS**.

3.      This action is **CLOSED**, and all pending motions are **DENIED AS MOOT**.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of September, 2018.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record
Magistrate Judge Goodman